

**FILED**

Feb 03 2015, 10:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Heath Y. Johnson
Suzy St. John
Johnson, Gray & MacAbee
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ANTONIO GARCIA,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>STATE OF INDIANA,<br><br>*Appellee-Plaintiff* | February 3, 2015<br><br>Court of Appeals Case No.<br>49A05-1402-CR-61<br><br>Appeal from the Marion Superior<br>Court<br>The Honorable Jose D. Salinas,<br>Judge<br>Case No. 49G14-1208-FD-54147 |

**Crone, Judge.**

## Case Summary

[1]     Antonio Garcia appeals his conviction for class D felony possession of a schedule III controlled substance (a hydrocodone/acetaminophen pill). He argues that the pill found in a container discovered in his pants pocket during a search incident to arrest was taken in contravention of his state constitutional

right against unreasonable search and seizure and was therefore inadmissible. Specifically, he contends that even though he was lawfully arrested and the search of his person incident to arrest was reasonable, it was unreasonable for the police to open the container. We conclude that the search of the container was unreasonable under the Indiana Constitution, and therefore the pill was inadmissible. Accordingly, we reverse Garcia's conviction.

## Facts and Procedural History[1]

On August 6, 2012, just before 9:00 p.m., Indianapolis Metropolitan Police Officer Philip Robinett saw Garcia driving a white Chevrolet Trailblazer. Although it was dusk, Garcia did not have the car's headlights on. Garcia also failed to signal when he moved from the travel lane to park along the street. Officer Robinett turned on his emergency lights to make a traffic stop. When he stopped behind Garcia, Garcia got out of his car. Officer Robinett ordered him to get back into the car, and Garcia complied. Officer Robinett approached the driver's side of Garcia's vehicle and an assisting officer approached the passenger side. They saw that Garcia was alone in the car. Garcia's first language is Spanish. Officer Robinett does not speak Spanish.

---

[1] We heard oral argument on January 15, 2015, at the Indiana University Robert H. McKinney School of Law in Indianapolis. We commend counsel for the quality of their advocacy, and we thank the school for its hospitality.

Officer Robinett testified that communication was a "little bit more difficult" and that there was a "slight language barrier, but based off of hand gestures and common questions between the police and citizens, we were able to easily navigate through the traffic stop." Tr. at 32.[2] Officer Robinett asked Garcia if he had a driver's license. Garcia did not have a driver's license, but he gave Officer Robinett his Mexican identification card. Officer Robinett searched the BMV database with the name on the identification card and found that Garcia did not have a valid driver's license.

[3] Officer Robinett arrested Garcia for class C misdemeanor driving without a license, although he also had the option of issuing a summons for this particular offense. Officer Robinett conducted a patdown search of Garcia incident to the arrest. He found a small metallic cylinder in Garcia's left front pants pocket. Officer Robinett had seen similar containers many times, "anywhere between two to ten times a year" over the previous five years. *Id.* at 26. In his experience, these containers held either illegal substances or properly prescribed medication.[3] He opened the container and found half a pill with specific

_____

[2] At trial, Garcia used a translator. He testified that he is fine speaking either English or Spanish, but wanted an interpreter for trial because it made him feel more comfortable. Tr. at 38.

[3] The parties dispute Officer Robinett's testimony regarding the probability that the container held legal drugs. Garcia states that there was a "strong possibility" that the contents of the container were legal. Appellant's Br. at 9. The State asserts that "this kind of container usually carried illegal drug[s]." Appellee's

markings on it indicating that it was hydrocodone/acetaminophen, a schedule III controlled substance. Garcia stated in English, "That's my narcotic for pain." *Id*. at 29. Officer Robinett did not find a valid prescription for the medication on Garcia's person or in the car.

[4] The State charged Garcia with class C misdemeanor driving without a valid license and class D felony possession of a controlled substance. At trial, Garcia moved to suppress the evidence found in the container on the grounds that opening the container was unreasonable under the United States and Indiana Constitutions. The trial court ultimately denied Garcia's motion to suppress. Garcia testified that he lived with his wife and their nine-year-old son and that his wife's elderly aunt had also lived with them until she died three days before his arrest. On the day of his arrest, Garcia cleaned out the aunt's room and found the container. He recognized it as a container for medicine and put it in his pocket so that his son would not get it. He forgot that he had it in his pocket when he drove the car later that night. Garcia submitted a pharmacy record showing that the aunt had a prescription for hydrocodone/acetaminophen pills.

---

Br. at 5. Officer Robinett testified as follows: "Every time I've either – I've located either some type of illegal substance or – unless it is a pill that is properly prescribed. That's the only time I've seen it to where the substance inside this cylinder is a legal substance." Tr. at 26-27.

The trial court found Garcia guilty as charged. Garcia appeals his felony conviction for possession of a schedule III controlled substance.

## Discussion and Decision

[5] Garcia argues that the evidence found in the container was inadmissible because opening the container was unreasonable under Article 1, Section 11 of the Indiana Constitution. We review a trial court's ruling on the admissibility of evidence "for abuse of [] discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). "We consider the evidence most favorable to the trial court's decision and any uncontradicted evidence to the contrary." *Lee v. State*, 916 N.E.2d 706, 707 (Ind. Ct. App. 2009). When an appellant's challenge to the admission of evidence is based on the argument that the search or seizure of the evidence was unconstitutional, it raises a question of law, which we review de novo. *Guilmette v. State*, 14 N.E.3d 38, 41 (Ind. 2014).

[6] Article 1, Section 11 reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[7] The purpose of Section 11 is to protect the privacy of Indiana citizens from unreasonable police activity. *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006).

Thus, "[w]e construe Section 11 liberally in favor of protecting individuals from unreasonable intrusions on their privacy." *Grier v. State*, 868 N.E.2d 443, 444 (Ind. 2007). Although the language of Section 11 tracks the Fourth Amendment of the U.S. Constitution verbatim, "Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Under the Indiana Constitution, the legality of a governmental search "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* (citing *Moran v. State*, 644 N.E.2d 536, 539 (Ind. 1994)). Although other factors may exist, the reasonableness of a search or seizure turns on a balance of "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361. "We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable." *Quirk*, 842 N.E.2d at 340.

[8] Garcia concedes that Officer Robinett had probable cause to arrest him for driving without a valid license and that the search of his person incident to arrest was reasonable under the Indiana Constitution. Garcia challenges only the reasonableness of Officer Robinett's search of the container itself to discover its contents. This issue has been settled under the Fourth Amendment. *See United States v. Robinson*, 414 U.S. 218, 236 (1973) (upholding constitutionality of officer's search of crumpled cigarette package found in defendant's coat

pocket during search incident to arrest for driving while his license was revoked); *Klopfenstein v. State*, 439 N.E.2d 1181, 1188 (Ind. Ct. App. 1982) (Fourth Amendment not violated when officer found Tylenol bottle in plastic bag on defendant's person during search incident to arrest, saw pills in bottom of plastic bag, removed pill bottle from bag, opened it, and discovered hashish).

[9] However, the State acknowledges that Fourth Amendment jurisprudence does not dictate the result under the Indiana Constitution.

> [W]hile experience has shown that analysis under the Indiana reasonableness standard generally obtains the same result as that of the federal Fourth Amendment, it would appear that where a "blanket" exception to the warrant requirement has been created for federal purposes it is appropriate to effect a different result which is based upon the actual considerations at hand according to Indiana's constitutional protections.

*State v. Moore*, 796 N.E.2d 764, 770 (Ind. Ct. App. 2003), *trans. denied* (2004). Accordingly, Section 11 requires us to consider the reasonableness of opening the container based on the totality of the circumstances.

[10] In so doing, we apply the *Litchfield* factors to the search of the container. As for the first factor, the degree of concern, knowledge, or suspicion that a criminal violation had occurred with respect to the pill vial was low prior to opening the

container.[4] As for the degree of intrusion, Garcia contends that it was high because "Hoosiers would regard the contents of a pill container as private." Appellant's Br. at 6. The State asserts that the degree of intrusion was low because the opening of the container occurred during a search incident to arrest supported by probable cause. Each of these arguments addresses a different aspect of the intrusiveness of this kind of search, and they both have merit.

[11] The next factor to consider is the extent of law enforcement needs. "A search incident to arrest serves important purposes, such as ensuring that the arrestee is unarmed, preventing the arrestee from bringing contraband into jail, and preventing the destruction of evidence." *Edmond v. State*, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011). Garcia argues that "without reasonable concern for safety, or a reasonable belief [that] it contained evidence relating to the offense [or] arrest that might be destroyed, the extent of law enforcement needs to search the metal cylinder was very low." *Id*. at 6-7. The State asserts that law enforcement needs were significant because even if Officer Robinett suspected

---

[4] Because we are examining the reasonableness of opening the container, it would appear that the degree of concern, knowledge, or suspicion that a violation occurred should be applied to the container rather than the arrest.

that the container held either legal or illegal drugs, he did not know exactly what was in it, and unknown objects always pose potential risks.

[12] Officer Robinett testified that he did not open the container out of safety concerns. Throughout the traffic stop and arrest, Garcia was completely cooperative. Also, Officer Robinett testified that he was familiar with these types of containers and they had always held either illegal or properly prescribed medication. Although there could be situations in which the police find an unfamiliar object on a person through a search incident to arrest that may justify further investigation, that situation did not occur here. There is no evidence in the record that Officer Robinett had any concern or suspicion that the container held anything that threatened his or the public's safety.

[13] As far as discovering or preserving evidence is concerned, the State conceded at oral argument that probable cause did not exist to support a warrant to search the container. In fact, there is no evidence in the record that would even establish reasonable suspicion that Garcia was carrying illegal drugs. He was pulled over because he did not have his headlights on at dusk and failed to use his turn signal while parking. He was arrested for a class C misdemeanor driving offense. Thus, there was no need for law enforcement to preserve evidence relating to the offense for which Garcia was arrested. Also, there were no circumstances unrelated to the reason for the arrest that led Officer Robinett to suspect that Garcia was impaired, had engaged in any illegal drug use, or was involved in any illegal drug dealing. Officer Robinett testified that he knew that containers like Garcia's were used to hold properly prescribed drugs. The

simple fact that these containers could also be used to hold illegal substances, without more, does not give rise to a reasonable suspicion that Garcia's container held illegal substances. Where there was no reasonable suspicion that illegal substances were present, the need of law enforcement to discover and/or preserve evidence was nonexistent.[5]

[14] In sum, Officer Robinett had no safety concerns to justify opening the container and also had no reasonable suspicion that it held any illegal substances. We conclude that given the facts of this case, it was unreasonable under the Indiana Constitution to open the container found in Garcia's pants pocket during a search incident to arrest. Accordingly, the pill was inadmissible. Therefore, we reverse Garcia's conviction for class D felony possession of a schedule III controlled substance.

[15] Reversed.

Mathias, J., and Bradford, J., concur.

---

[5] Given that the container was seized incident to a lawful arrest and Garcia was being taken to jail and booked, it may be that the container could have or would have been seized and opened as part of routine booking procedures and inventory purposes. However, the State acknowledges that the container was not opened for inventory or booking procedures.