## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2017, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David James Hippensteel, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | April 28, 2017 <br><br> Court of Appeals Case No. 82A01-1612-CR-2858 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Michael J. Cox, Magistrate <br><br> Trial Court Cause No. 82C01-1607-F6-3893 |

**Brown, Judge.**

[1] David James Hippensteel appeals his conviction for resisting law enforcement as a level 6 felony. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

### Facts and Procedural History

[2] At approximately 11:15 a.m. on June 30, 2016, Hippensteel entered the Evansville District Indiana State Police Post, asked to speak to the highest-ranking person, and Lieutenant Brian Bailey, the district commander of the post, met with Hippensteel in his office. Lieutenant Bailey spoke with Hippensteel for approximately fifteen to twenty minutes, noticed that Hippensteel was "having trouble making complete thoughts and statements" and was "kind of talking in circles," and determined that Hippensteel was making a complaint regarding law enforcement officers from another jurisdiction visiting the residence where he stayed with his mother several days earlier. Transcript at 8-9. Hippensteel told Lieutenant Bailey that his mother was no longer at the residence, that he wanted to know where she was, and that the officers had asked him if he was suicidal.

[3] Lieutenant Bailey ultimately explained to Hippensteel that there was no allegation that a crime had occurred, that he did not have authority over other police agencies, and told him where to make a complaint if he desired. Hippensteel responded "fine . . . I'm just going to leave," turned and walked toward the door, stopped and stated that he needed Lieutenant Bailey's name, and Lieutenant Bailey told him his name and position. *Id.* at 11. Hippensteel said that he needed Lieutenant Bailey's business card, Lieutenant Bailey said

there was no reason for Hippensteel to have his business card, again told Hippensteel his name and position, and said that if he had a problem he could talk to one of his supervisors. Hippensteel said that he was not going to leave, and Lieutenant Bailey stated that he needed to leave in a peaceful manner. At that point, Hippensteel lunged towards Lieutenant Bailey's desk "like he was going to get something off of it himself," Lieutenant Bailey again told him to leave, and Hippensteel began yelling that he wanted Lieutenant Bailey's name and business card. *Id.* at 12. Lieutenant Bailey placed his right hand on the back of Hippensteel's left arm to direct him toward the door, and Hippensteel stated loudly "you can't make me leave." *Id.* at 13.

[4] Sergeant Jason Allen, whose office was across the hall, noticed that Hippensteel had raised his voice, heard Hippensteel say he was not going to leave, stood up and started to walk toward Lieutenant Bailey's office, and again heard Hippensteel say that he was not leaving. Sergeant Allen stood on the other side of Hippensteel and attempted to grab his arm, and Hippensteel pulled away from him. It was obvious to Lieutenant Bailey that Hippensteel had no intention of leaving and told Hippensteel that he was under arrest. Lieutenant Bailey and Sergeant Allen struggled with him to move him out of Lieutenant Bailey's office and into the open area between the offices so that they could place him in handcuffs.

[5] In attempting to move Hippensteel out of Lieutenant Bailey's office, Sergeant Allen pulled and Lieutenant Bailey pushed Hippensteel, but he "was just too strong" and the officers "couldn't get him to move." *Id.* at 38. Sergeant Allen

gave loud verbal commands to Hippensteel to stop resisting and go to the ground. As the officers moved Hippensteel to the doorway, Sergeant Allen administered two knee strikes to Hippensteel's "common peroneal" to move him into the hall because the doorway was a bad place to be with the weapons. *Id.* at 35. The knee strikes advanced Hippensteel and the officers through the doorway into the hall. Once through the doorway, the three men "started to kind of pivot around," Sergeant Allen was placed against the wall, all three men fell down, and Sergeant Allen "felt a pop in [his] right leg." *Id.* at 35, 38.

[6] The officers attempted to place handcuffs on Hippensteel, who was "a very strong man" and "just seemed to have no pain compliance," and the officers were eventually able to handcuff him. *Id.* at 35. After being handcuffed, Hippensteel "resisted for an unusually long time" and kicked his legs until Sergeant Allen placed his leg in a leg lock. *Id.* at 14. Hippensteel did not calm down for two or three minutes. Sergeant Allen then told Lieutenant Bailey that he believed his ankle was broken. Sergeant Allen was taken to the emergency room and learned that his right fibula was fractured above the ankle bone. He was unable to work for three and one-half weeks and was then placed on light, non-uniform duty until mid-September.

[7] While Hippensteel was in jail, he placed several telephone calls which were recorded. During one of the phone conversations, Hippensteel stated he went to the police post and "went in there and tried to figure out what happened with why those people showed up at the house," "the highway patrol tried to arrest me and he had no reason to arrest me and so I got in a fight with him and then I

kind of beat him up," and "that's why I'm in here for assault but it'[s] absolutely no crime because I didn't do anything wrong." *Id.* at 44. He later stated "believe me, I'm not going to be in any trouble at all, the man that tried to punch me is going to get into a lot of trouble, I promise. I just, plus the fact, and I beat him up is the problem." *Id.* at 46. The person with whom Hippensteel was speaking stated "[b]ut I understand you broke his foot," and Hippensteel responded "[w]ell, he's a baby" and later stated "[h]e tried to arrest me, he had no reason to arrest me at all and I didn't do anything wrong and then so I got in a fight with him and then I ended up breaking his foot" and "[h]e's a police officer, he had nothing to do with this case, he's going to end up going to jail for what he did to me." *Id.*

[8]     On July 5, 2016, the State charged Hippensteel with resisting law enforcement as a level 6 felony and disorderly conduct as a Class B misdemeanor. In November 2016, the court held a bench trial at which it heard the testimony of Lieutenant Bailey and Sergeant Allen. The court found Hippensteel guilty as charged and sentenced him to one year suspended to probation for his conviction for resisting law enforcement as a level 6 felony and ninety days suspended to probation for his conviction for disorderly conduct as a class B misdemeanor, to be served concurrently. The court indicated Hippensteel received 154 days of jail credit and that, if he successfully completes probation, the court will allow him to request to enter the conviction for resisting law enforcement as a class A misdemeanor.

## *Discussion*

The issue is whether the evidence is sufficient to sustain Hippensteel's conviction for resisting law enforcement as a level 6 felony.[1] When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

Ind. Code § 35-44.1-3-1(a) provided at the time of the offense that "[a] person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b)," and Ind. Code § 35-44.1-3-1(b) provided that the offense is a level 6 felony if, "while committing any offense described in subsection (a), the person . . .

---

[1] Hippensteel does not challenge his conviction for disorderly conduct as a class B misdemeanor.

inflicts bodily injury on or otherwise causes bodily injury to another person . . . ."[2]  The State alleged that Hippensteel "did knowingly or intentionally forcibly resist, obstruct or interfere with Trooper J. Allen a law enforcement officer, while said officer was lawfully engaged in [his] duties as a law enforcement officer and in committing said act the defendant inflicted bodily injury on or otherwise caused bodily injury to Trooper J. Allen to-wit: injury to ankle." Appellant's Appendix II at 16.  "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."  Ind. Code § 35-41-2-2(a).  "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[11]  Hippensteel does not argue that he did not forcibly resist Sergeant Allen or that Sergeant Allen did not suffer bodily injury.  Rather, he argues the State failed to prove his resistance caused Sergeant Allen's injury and that his conviction for resisting law enforcement must be reduced to a misdemeanor.  He contends that the undisputed testimony was that Sergeant Allen was injured when he placed Hippensteel in a leg lock and not as the result of Hippensteel's actions, no one testified that Hippensteel performed any act that inflicted Sergeant Allen's injury, and that the injury was caused by the officer's own movements. The State maintains that the evidence supports the conclusion that Hippensteel

---

[2] Subsequently amended by Pub. L. No. 198-2016 § 673 (eff. Jul. 1, 2016).

inflicted or otherwise caused Sergeant Allen's injury and that Hippensteel was not a passive participant in the encounter with the officers.

[12] Hippensteel asserts that *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014), and *Moore v. State*, 49 N.E.3d 1095 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*, support his position. In *Smith*, a police officer pulled the defendant's arm and took her to the ground, and as a result the officer suffered some scrapes from being on the pavement. 21 N.E.3d at 123. This Court held that the defendant did not inflict an injury on the officer or directly cause the officer's injury, and we noted that we "agree[d] with Smith that she was 'a passive part of the encounter' and 'took no actions toward' him." *Id.* at 125. We further stated that, "[a]s we do not believe a person who is thrown to the ground necessarily 'inflicts' or 'causes' an injury suffered by the person who throws her to the ground, we decline to follow *Whaley* [*v. State*, 843 N.E.2d 1 (Ind. Ct. App. 2006), *trans. denied*]," that the officer "chose to halt Smith's resistance by throwing her to the ground, and the officer was injured in so doing," and that, "[u]nlike *Whaley*, Smith did not create a scenario in which [the officer's] only option in handcuffing her was to remove her hands from a location in which he could not reach." *Id.* at 125-126.

[13] In *Moore*, a police officer fell down while engaged in a foot pursuit and was injured. 49 N.E.3d at 1099. The Court noted that, in *Whaley*, the defendant was the direct cause of the officers' injuries because he left the officers no other choice but to hit his arms and that "this meant that the officers' injuries were a highly foreseeable result of Whaley's actions" and that, "[i]n contrast, in *Smith*,

the officer had other options, and his decision to take Smith 'to the ground' and injure himself was not as foreseeable." *Id.* at 1108. The Court held that the evidence was not sufficient to show the defendant caused the officer's injuries under the statute and that he did not place the officer in a position where his only option was to suffer injury. *Id.*

[14] Here, we cannot conclude that Hippensteel was a passive participant or that Sergeant Allen's injury was not a highly foreseeable result of his actions. Hippensteel lunged towards Lieutenant Bailey's desk, declared loudly that Lieutenant Bailey could not make him leave, struggled with Lieutenant Bailey and Sergeant Allen as they removed him from Lieutenant Bailey's office, and continued to struggle after he was on the ground. Lieutenant Bailey testified there was not room to take Hippensteel into custody in the office with him fighting, and Sergeant Allen testified that, if the officers had to take him to the ground in the office, someone was going to be hurt. Hippensteel took numerous affirmative steps of struggling with the officers, including Sergeant Allen, reasonably necessitating the actions of the officers to subdue him. *Smith* and *Moore* are distinguishable.

[15] The evidence most favorable to the conviction demonstrates that Sergeant Allen's injury was directly related to and caused by Hippensteel's resisting arrest. Sergeant Allen testified that he and Lieutenant Bailey attempted to move Hippensteel out of Lieutenant Bailey's office but that Hippensteel "was just too strong" and they "couldn't get him to move." Transcript at 38. He

testified he gave loud verbal commands to Hippensteel to stop resisting and go to the ground.

[16] Sergeant Allen also testified that, as the officers moved Hippensteel to the doorway, he administered two knee strikes to Hippensteel's "common peroneal" in order "to bring him outside of that doorway." *Id.* at 35, 38. He testified that the knee strikes "weren't effective like they usually were, but it did advance us through the door." *Id.* at 38. Sergeant Allen further testified "then once we got out to the door we started to kind of pivot around I guess and that's when we all fell down." *Id.* He stated "[t]hose knee strikes were to get us out of that doorway" and "once we got out of the doorway and we transitioned into the hall, I had placed both feet back on to the ground and that's when we fell." *Id.* at 37. He stated "[w]e went to the ground, I felt a pop in my right leg." *Id.* at 35. He also testified Hippensteel was "a very strong man" who "seemed to have no pain compliance." *Id.* Lieutenant Bailey testified that, after being handcuffed, Hippensteel "resisted for an unusually long time," kicked his legs until Sergeant Allen placed his leg in a leg lock, and did not calm down for two or three minutes. *Id.* at 14. Sergeant Allen indicated that, if Hippensteel had not resisted, he would not have broken his leg.

[17] Based upon our review of the testimony most favorable to the conviction, we conclude that a reasonable trier of fact could have found that Hippensteel inflicted or otherwise caused the bodily injury sustained by Sergeant Allen and that sufficient evidence exists from which the trier of fact could find Hippensteel guilty beyond a reasonable doubt of resisting law enforcement as a level 6

felony. *See Whaley*, 843 N.E.2d at 10-11 (holding that the evidence was sufficient to sustain the defendant's convictions of resisting law enforcement as class D felonies where the defendant argued that the officers inflicted the injuries upon themselves in attempting to handcuff him and noting that the officers' injuries were directly related to and caused by the defendant's resisting arrest).

## *Conclusion*

[18] For the foregoing reasons, we affirm Hippensteel's conviction for resisting law enforcement as a level 6 felony.

[19] Affirmed.

May, J., and Pyle, J., concur.