## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2017, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Bivens,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 9, 2017

Court of Appeals Case No.
49A02-1606-CR-1388

Appeal from the Marion Superior Court

The Honorable Amy Barbar, Judge

Trial Court Cause No.
49G02-1507-F5-24765

**Brown, Judge.**

[1] Williams Bivens appeals his convictions for resisting law enforcement as a level 6 felony and public intoxication as a class B misdemeanor. Bivens raises two issues which we consolidate and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

*Facts and Procedural History*

[2] At approximately 2:30 or 3:00 a.m. on July 11, 2015, Officers Elizabeth Wilson and Tim Elliott of the Indianapolis Metropolitan Police Department and a third police officer, Officer Disney, were speaking with the occupants of a vehicle they had stopped in front of a gas station in Indianapolis. Traffic was entering and exiting the station's parking lot, and Officer Wilson was standing on a sidewalk along 16th Street. Officer Elliott observed Bivens pedaling towards the officers while yelling and screaming at them. Officer Wilson noticed Bivens approach the officers on a bicycle on the sidewalk and that "[h]e was kind of more like a pedal fall to one side, stop; pedal, fall to one side, stop," and "was using his legs as a kickstand to push back." Transcript at 9. Officers Wilson and Elliott thought Bivens was under the influence of either a narcotic or alcohol. Bivens was unable to ride the bicycle correctly, could not make a full rotation on the pedals, and had to fall to one side to catch himself. The officers asked Bivens his name and where he was going, and he was unable to answer and could not verbalize anything. Officer Elliott observed that Bivens had "a very heavy tongue," slurred speech, bloodshot and glassy eyes, and a swaying and unsteady balance. *Id.* at 29. When the officers asked for his birthday, Bivens gave them "a set of numbers that wasn't a birthday." *Id.* at 30. The

officers observed that Bivens exhibited the signs of an individual on marijuana, PCP, or "wet."[1] *Id.* at 24, 31. Bivens became very aggressive, argumentative, angry, and belligerent toward the officers. He got off of the bicycle, kept "balling his hands up into a fist at his side; kept trying to put his hands in his pockets, reach in his waist band," "kept trying to puff his chest out," and "would . . . look all of [the] officers up and down." *Id.* at 12.

[3] Bivens stepped back, Officer Wilson placed her hand on his back and said "step up, you're gonna walk into the street," and he "didn't really understand" and "stepped back up." *Id.* at 13. A second time, Bivens "stepped back a little bit . . . more aggressively," Officer Wilson placed two hands on his back and "said hey, I said you're gonna go into the street. I don't want you to get hit by a car. You need to . . . stay on the sidewalk," and Bivens "[d]idn't really understand again what [she] was saying, but he stepped back up." *Id.* At some point, Officer Elliott told Bivens that he was going to be placed under arrest and to place his hands behind his back. Officer Wilson observed Bivens's left foot "drop back behind him," that he "was still on his right foot," and that "he was about to pivot on that foot to take off . . . and he did." *Id.* Officer Wilson

---

[1] Officer Elliott testified that "[a] wet's embalming fluid, PCP" and "[t]hey normally dip their cigarettes and or marijuana in it, or they'll lace their cigarettes of marijuana with the stuff." Transcript at 31. Officer Wilson indicated she believed that Bivens, based on his actions and manners, was on "PCP or wet," that "with the encounters that [she] had in the past, . . . the subjects . . . can't verbalize anything," "they're sweating profusely," "[t]hey get aggressive and then they kind of calm down, and then they get aggressive and once the level of aggression hits a certain peak, it stays that way, and that's when you get the resister," "that's when . . . they go into a manic state," and that she observed all these signs with Bivens. *Id.* at 24.

grabbed Bivens's shirt, and the two of them "ended up going into 16th Street."
*Id.*

[4] When Officer Wilson grabbed Bivens's shirt and was pulled into 16th Street with him, he turned with a closed fist and punched her in the nose, causing her pain, a bloody nose, difficulty breathing through her nose, and her glasses to be thrown off of her face. Officer Wilson attempted to move Bivens out of the street, she was behind him pushing him, the two other officers were trying to pull him, and "in that everyone kind of got . . . intertangled." *Id.* at 14. Bivens was ignoring all verbal commands to stop resisting. Officer Wilson performed a "leg sweep on [Bivens] from behind to which all of [the] officers fell to the ground." *Id.* Bivens placed his hands underneath his chest and refused to give the officers his wrists, Officer Wilson and Officer Elliott threw knee strikes in an attempt to subdue him, Officer Elliott attempted to tase him, and Officer Elliott ultimately used a baton to pry his arm out from under him so that he could be cuffed. Other officers arrived at the scene and helped subdue Bivens, with one officer taking one leg, another taking the other leg, another holding his arm, and another holding his head. After Bivens was cuffed, the police noticed he was sweating and had a white residue around his lips, and they called for emergency medical personnel.

On July 14, 2015, the State charged Bivens with Count I, battery against a public safety official as a level 5 felony[2]; Count II, resisting law enforcement as a level 6 felony[3]; and Count III, public intoxication as a class B misdemeanor.[4] On April 27, 2016, the court held a bench trial at which the court heard the testimony of Officer Wilson, Officer Elliott, and Bivens.

With respect to the struggle between Bivens and the police, Officer Wilson testified that, after she was punched and pulled into the street, she attempted to move Bivens out of the street and "get behind him and push him," that "the two other officers were trying to pull him," and: "in that everyone kind of got inter – intertangled. Arms were flying, fists were flying. We were trying to put his arms to his side. [H]e was ignoring all verbal commands of quit resisting; stop resisting; just stop; just stop." *Id.* at 14. She testified: "The only way that we could get him to the ground safely was I was able to do a leg sweep on him from behind to which all of us officers fell to the ground, . . . and . . . Bivens then put all he – put both of his hands underneath his chest refusing to give us any of his . . . wrists so we could cuff him." *Id.* She further testified that she "was throwing knee strikes to his thigh to try to and get him to release," that

---

[2] Under Count I, the charging information alleged that Bivens did knowingly touch Officer Wilson in a rude, insolent, or angry manner by punching or striking her in the face while she was engaged in the execution of her official duties, resulting in bodily injury.

[3] Under Count II, the information alleged that Bivens did knowingly resist, obstruct or interfere with Officer Elliott and in doing so inflicted bodily injury on or otherwise caused bodily injury to Officer Elliott.

[4] Under Count III, the information alleged that Bivens was found in a public place or a place of public resort in a state of intoxication and either breached the peace or was in imminent danger of breaching the peace.

Officer Elliott had tried to tase him, and that the officers "had to use the . . . baton to try to get his arm pried out." *Id.* at 15. She also stated: "[W]hen we were able to all fall to the ground and the fight was on to try and get his hands out from - again he was reaching towards his waistband when we first encountered him so we didn't know if in his waistband he had anything. So in trying to get his hands out from underneath of him, . . . the fight was on." *Id.*

[7] Officer Elliott testified that, "[a]s the officers grabbed . . . Bivens's arms, he began to violently kick, twist, pull, . . . dropping his center of gravity, lowering his head in attempt to kind of break free or get away from officers." *Id.* at 32. He testified that, "[a]s we got back towards the grassy area of the sidewalk, Officer Disney did what we call a straight arm bar to lock the joint all the way out, apply pressure and . . . use forward momentum force for a hip toss while Officer Wilson grabbed the back of his head, pushed down to redirect his center of gravity further to help assist," Bivens "was still violently pulling around . . . pulling back and kicking," and "[w]hen he was doing that, his actions along with the other two officers['] actions caused all of us to fall, and we fell and landed in the grass way sidewalk." *Id.* at 33. When asked if he knew which side of his body he landed on, Officer Elliott indicated his left side. He testified Bivens was still not compliant, placed his hands underneath his body and specifically towards his waistline, and was still kicking and swaying from side to side in a violent manner. He stated he deployed knee strikes to the shoulder and deployed his taser but it was not effective, that he was able to wedge part of his arm between Bivens's ribs and arm, asked for another officer's baton and

used it as a pry tool mechanism between his ribs and arm, and was able to straighten his arm out with the assistance of the baton and bring it back and cuff him.

[8] When asked if he noticed any pain or injuries after he placed Bivens in handcuffs, Officer Elliott responded affirmatively and testified "[s]pecifically, my left side, my shoulder, elbow, forearm, bicep, my hand," and when asked when he noticed the pain, he said "I noticed my shoulder whenever we were in the midst of fighting on the ground. I noticed my hand, bicep, forearm after the fight." *Id.* at 36. When asked if he could be more specific about his left arm, Officer Elliott testified "I couldn't raise my arm. I couldn't bend my bicep, and I couldn't hold on to objects and I couldn't grip anything." *Id.* When asked "[d]id it cause pain," he answered "[y]es sir, it did." *Id.* at 36-37. When asked "[d]o you know the exact moment when you suffered that injury," Officer Elliott testified "I know it was during the whole struggle with . . . Bivens." *Id.* at 37.

[9] The court found Bivens guilty on all three counts and sentenced him to 1,095 days with 1,005 days suspended for his conviction under Count I, 365 days all suspended for his conviction under Count II, and thirty days all suspended for his conviction under Count III, to be served concurrently. It ordered that Bivens serve his ninety-day sentence on home detention through community corrections.

### *Discussion*

[10] The issue is whether the evidence is sufficient to sustain Bivens's convictions for resisting law enforcement and public intoxication.[5]  When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess witness credibility or reweigh the evidence.  *Id.*  We consider conflicting evidence most favorably to the trial court's ruling.  *Id.*  We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000)).  It is not necessary that the evidence overcome every reasonable hypothesis of innocence.  *Id.* at 147.  The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.  *Id.*

A.  *Resisting Law Enforcement*

[11] Ind. Code § 35-44.1-3-1(a) provides in part that "[a] person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b)."  Ind. Code § 35-

---

[5] Bivens does not challenge his conviction for battery against a public safety official as a level 5 felony under Count I.

44.1-3-1(b) provides that the offense is a level 6 felony if, "while committing any offense described in subsection (a), the person . . . inflicts bodily injury on or otherwise causes bodily injury to another person . . . ." The State alleged that Bivens "did knowingly forcibly resist, obstruct or interfere with Officer T. Elliott, a law enforcement officer, while said officer was lawfully engaged in his duties as a law enforcement officer and in committing said act the defendant inflicted bodily injury on or otherwise caused bodily injury to Officer T. Elliott, to-wit: physical pain." Appellant's Appendix at 24. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[12] Bivens does not argue that he did not forcibly resist Officer Elliott or that Officer Elliott did not suffer bodily injury. Rather, he argues the State failed to prove that his resistance caused Officer Elliott's injury and that his conviction for resisting law enforcement must be reduced to a misdemeanor. He argues that Officer Wilson applied a leg sweep to him which caused him to collapse along with the other officers and that, "[a]lthough [his] actions may have played a contributing role in the sense that he . . . refused to be handcuffed, Officer Wilson ultimately made the decision to deploy a leg sweep in order to knock him to the ground" and that "she made this decision despite the fact that the other officers were attempting an alternative method." Appellant's Brief at 16. The State maintains that Bivens began the violence by punching Officer Wilson and that the officers' attempt to subdue him was a foreseeable result of

his decision to attack and keep struggling with them, and that Bivens was not passive.[6]

[13] The evidence most favorable to Bivens's conviction demonstrates that Officer Elliott's injury was directly related to and caused by Bivens's resisting arrest. Although Officer Wilson testified that she performed a leg sweep and all of the officers fell to the ground and Officer Elliott testified he fell on his left side, Officer Elliott testified that Officer Disney performed "a straight arm bar to lock the joint all the way out, apply pressure and . . . use forward momentum force for a hip toss while Officer Wilson grabbed the back of his head, pushed down to redirect his center of gravity further to help assist," Bivens "was still violently pulling around" and "pulling back and kicking," and "[w]hen he was doing that, his actions along with the other two officers['] actions caused all of us to fall, and we fell and landed in the grass way sidewalk." Transcript at 33. Further, the testimony establishes that, after the fall, Bivens continued to fight with the officers and Officer Elliott continued to engage and struggle with him.

---

[6] To the extent Bivens asserts the evidence was insufficient because his encounter with police constituted an unlawful investigatory stop, we note he does not point to the record to show, and our review does not reveal, that he objected to the admission of the testimony of the officers at trial on that basis, and thus Bivens has waived this argument. *See Lewis v. State*, 755 N.E.2d 1116, 1122 (Ind. Ct. App. 2001) (noting the trial court admitted evidence at trial without objection or over an objection made upon grounds other than search and seizure and that the defendant made no challenge to the constitutionality of the searches based on the Fourth Amendment until after the evidence had been admitted and he had completed his initial cross-examination of a State trooper, resulting in waiver of appellate review); *Coates v. State*, 650 N.E.2d 58, 60 (Ind. Ct. App. 1995) (holding that the defendant waived his argument that the trial court erred in admitting evidence obtained after an investigatory stop because he did not object to the admission of the evidence on that basis at trial), *trans. denied*.

Based upon our review of the testimony most favorable to the conviction, we conclude that a reasonable trier of fact could have found that Bivens inflicted or otherwise caused the bodily injury sustained by Officer Elliott and that sufficient evidence exists from which the trier of fact could find Bivens guilty beyond a reasonable doubt of resisting law enforcement as a level 6 felony. *See Whaley v. State*, 843 N.E.2d 1, 10-11 (Ind. Ct. App. 2006) (holding that the evidence was sufficient to sustain the defendant's convictions of resisting law enforcement as class D felonies where the defendant argued that the officers inflicted the injuries upon themselves in attempting to handcuff him and noting that the officers' injuries were directly related to and caused by the defendant's resisting arrest and that the defendant's actions were included within the definition of inflict in the statute), *trans. denied*.[7]

---

[7] In support of his argument, Bivens cites *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014), in which a police officer pulled the defendant's arm and took her to the ground, and as a result the officer suffered some scrapes from being on the pavement. 21 N.E.3d at 123. This court held that the defendant did not inflict an injury on the officer or cause the officer's injury, and we noted that we "agree[d] with Smith that she was 'a passive part of the encounter' and 'took no actions toward' him." *Id.* at 125. We further stated that, "[a]s we do not believe a person who is thrown to the ground necessarily 'inflicts' or 'causes' an injury suffered by the person who throws her to the ground, we decline to follow *Whaley*," that the officer "chose to halt Smith's resistance by throwing her to the ground, and the officer was injured in so doing," and that, "[u]nlike *Whaley*, Smith did not create a scenario in which [the officer's] only option in handcuffing her was to remove her hands from a location in which he could not reach." *Id.* at 125-126. Bivens also cites *Moore v. State*, in which a police officer fell down while engaged in a foot pursuit and was injured. 49 N.E.3d 1095, 1099 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*. The court noted that, in *Whaley*, the defendant was the direct cause of the officers' injuries because he left the officers no other choice but to hit his arms and that "this meant that the officers' injuries were a highly foreseeable result of Whaley's actions" and that, "[i]n contrast, in *Smith*, the officer had other options, and his decision to take Smith 'to the ground' and injure himself was not as foreseeable." *Id.* at 1108. The court held that the evidence was not sufficient to show the defendant caused the officer's injuries under the statute and that he did not place the officer in a position where his only option was to suffer injury. *Id.* Here, we cannot conclude that Bivens was a passive participant or that Officer Elliott's injury was not a highly foreseeable result of Bivens's actions. Officer Wilson testified that "[t]he *only way* that we could get him to the ground safely was I was able to do a leg sweep on him . . . ." Transcript at 14 (emphasis added). Bivens took numerous affirmative steps of struggling with all of the officers, including

B. *Public Intoxication*

Ind. Code § 7.1-5-1-3 provides in part that it is a class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance if the person breaches the peace or is in imminent danger of breaching the peace.

Bivens argues that he reacted to the actions of the police officers, that prior to the encounter he was quietly riding or attempting to ride a bike, and that any commotion by him was in response to his illegal detention by the police. The State argues that, "[b]efore the officers began to arrest Bivens, before Bivens punched Officer Wilson, Bivens jettisoned his bicycle and balled his hands into fists" and "attempted to reach into his pockets and put reach [sic] his waistband – actions which can threaten danger in the context of an interaction with police." Appellee's Brief at 18.

A breach of the peace includes all violations of public peace, order, or decorum. *Lemon v. State*, 868 N.E.2d 1190, 1194 (Ind. Ct. App. 2007). It is a violation or disturbance of the public tranquility or order and includes breaking or disturbing the public peace by any riotous, forceful, or unlawful proceedings. *Id*.

---

Officer Elliott, reasonably necessitating the actions of the officers to subdue him. We find *Smith* and *Moore* distinguishable.

[18] We note that Bivens does not argue that he was not in a public place and in a state of intoxication, and the State elicited testimony from Officers Wilson and Elliott that they believed Bivens was intoxicated with alcohol or a narcotic, he was struggling to ride the bicycle and was riding in a very unsafe manner, and he had slurred speech and bloodshot and glassy eyes, could not verbalize or articulate anything, and was swaying and unsteady. Rather, Bivens focuses on whether he breached the peace or was in imminent danger of doing so. When asked to describe what happened, Officer Elliott testified that Bivens was on his bicycle pedaling "towards the officers while yelling and screaming at [them]." Transcript at 28. He testified Bivens "was yelling at officers when [they] were trying to communicate with him." *Id.* at 29. Officer Wilson testified that the officers started to question Bivens and he became very aggressive and argumentative, balled his hands into fists and tried to reach in his pocket or waistband, tried to puff his chest out, and looked the officers up and down. She testified that she had "seen it before," "they kind of size you up . . . to see if they can take you," "it was being done to all three" officers, and "[h]e would do it to Disney, do it to Elliott, and then he would turn around and do it to [her]." *Id.* at 12.

[19] Based upon the testimony most favorable to the conviction, we conclude that the evidence supports a finding that Bivens disturbed the public tranquility, that a reasonable trier of fact could have found that Bivens breached the peace or was in imminent danger of breaching the peace, and that sufficient evidence exists from which it could find Bivens guilty beyond a reasonable doubt of

public intoxication as a class B misdemeanor. *See Williams v. State*, 989 N.E.2d 366, 370-371 (Ind. Ct. App. 2013) (observing that the defendant was extremely intoxicated and staggered from side to side, he refused to move off of the street and to the sidewalk although commanded by the police multiple times to do so, was belligerent with the officers which the officers believed was due to his intoxicated condition, did not move out of the street until the officers physically escorted him, and jerked away from officers, and holding the evidence was sufficient for the trial court to find him guilty of public intoxication as a class B misdemeanor); *Naas v. State*, 993 N.E.2d 1151, 1153 (Ind. Ct. App. 2013) (holding the evidence most favorable to the conviction was that the defendant was agitated, yelling, trying to continue the altercation, and walking in an aggressive manner, and affirming the defendant's conviction for public intoxication as a class B misdemeanor).

## *Conclusion*

[20] For the foregoing reasons, we affirm Bivens's convictions for resisting law enforcement as a level 6 felony and public intoxication as a class B misdemeanor.

[21] Affirmed.

Vaidik, C.J., and Bradford, J., concur.