

FILED

Nov 21 2017, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Ann Johnson
Indianapolis, Indiana

Matthew D. Anglemeyer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathaniel Thrash,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 21, 2017

Court of Appeals Case No.
49A02-1603-CR-494

Appeal from the Marion Superior
Court

The Honorable David Hooper,
Magistrate

Trial Court Cause No.
49G25-1509-F6-34723

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Nathaniel Thrash (Thrash), appeals his conviction for two Counts of resisting law enforcement, as a Class A misdemeanor, and as a Level 6 felony, Ind. Code § 35-44.1-3-1(a)(1).

We affirm.

# ISSUES

Thrash presents three issues on appeal, which we restate as the following:

(1) Whether the trial court abused its discretion by admitting certain evidence;

(2) Whether the State presented sufficient evidence to support Thrash's Level 6 felony resisting law enforcement conviction; and

(3) Whether Thrash's conviction for two Counts of resisting law enforcement violated the prohibition against double jeopardy under the Indiana Constitution.

# FACTS AND PROCEDURAL HISTORY

At approximately 7:00 p.m. on September 29, 2015, Indianapolis Metropolitan Police Department officers Christopher Cooper (Officer Cooper) and Derek Jackson (Officer Jackson) were dispatched to an apartment building located at 3640 North Meridian Street in Indianapolis, Indiana. Upon arriving, the officers encountered a woman who identified herself as Thrash's ex-girlfriend. Thrash's ex-girlfriend was visibly upset and she explained to the officers that

Thrash was not supposed to be there, and she believed Thrash had a pending warrant of arrest. Moments later, the officers made eye contact with Thrash, and saw him run west in the common hallway and toward the back of the building. Thrash, however, did not exit the apartment building.

[5] Thrash's ex-girlfriend allowed the officers inside the building, and the officers pursued Thrash in the direction he ran. When the officers reached the end of the hallway, they observed a stairwell leading to dark hallway basement that had numerous locked doors. While going down to the basement, the officers had their guns drawn and flashlights on. In addition, the officers loudly announced their presence by stating, "POLICE!" (Transcript p. 44). While Officer Jackson was searching the laundry room at the base of the staircase, Officer Cooper proceeded down the narrow hallway. There, Officer Cooper came across Thrash standing in a dark corner. Thrash's hands were in his coat pockets. Officer Cooper yelled several times, "[S]how me your hands!" but Thrash did not comply. (Tr. p. 76). Upon hearing the commotion in the back, Officer Jackson joined Officer Cooper. Both officers ordered Thrash, on multiple occasions to show them his hands, but Thrash did not obey their commands. As such, Officer Cooper holstered his gun, approached Thrash, and forcefully grabbed his right arm in an attempt to remove Thrash's hands from his coat pocket. Officer Jackson did the same for Thrash's left arm. Thrash, however, flexed his muscles and jerked his arms away. Based on Thrash's resistance, Officer Cooper effectuated a "leg sweep," which brought Thrash down to the ground. (Tr. p. 79). While lying on the ground, Thrash

refused to remove his hands from underneath his body. The officers bent over and restrained Thrash's hands. As Officer Jackson got Thrash off the ground, he saw Officer Cooper bent over and Officer Cooper was experiencing pain in his back. Thrash thereafter voiced to Officer Jackson that he was sorry for resisting arrest, and for Officer Cooper's injury.

[6] On September 30, 2015, the State filed an Information, charging Thrash with Count I, resisting law enforcement, a Level 6 felony; and Count II, resisting law enforcement, a Class A misdemeanor. A jury trial was held on January 26, 2016. On the morning of Thrash's jury trial, the trial court conducted a suppression hearing pursuant to Thrash's motion to exclude the officers' hearsay testimony regarding his ex-girlfriend's statement that Thrash had a pending warrant of arrest. Both Officers Cooper and Jackson testified, and reiterated the hearsay statement over Thrash's objection. At the close of the suppression hearing, Thrash's counsel expressed to the trial court that he had no issue with the officers' hearsay testimony, so long as their testimonies left out the warrant aspect. Thrash's counsel was concerned that the "warrant aspect" would be "too toxic," and was "worried the jury is going to hear that [Thrash] has a warrant and just shut down." (Suppression Tr. p. 27). Following Thrash's argument, the trial court ruled as follows:

> Now Officers, [I] need you both listen to me very carefully, State already said what you're going to be allowed to say. I'm going to order over the Defense objection on a limiting instruction. When the jury is in here and you're testifying you can say that she said she doesn't want him here. . . .

\*\*\*\*

> And that she told you she thinks he has a warrant. Alright. We can't get into her head while she's not here, so the fact that she said he has a warrant I'm not going to even say that that's true. So you can say that she expressed to you that she thought he had a warrant. Okay. I don't want to hear a word about wanted for escape. I don't want to hear a word about anything else that she said or I will mis-try (sic) this thing. Alright. Now this is a pretty close call, but I'm using my discretion. State, I'm going to order you to prepare that limiting instruction. I'm going to order that that be given as well. We're showing [Thrash's] objection. Don't forget to object during trial to preserve it, Defense. Don't forget to object during trial, too, when we get to that point. So be very careful, [o]fficers. Because I am, again, using my discretion under the rules of evidence to let some things in here but it is, it is concerning. Okay.

(Suppression Tr. p. 28). After the jury was empaneled and sworn in, Thrash's trial proceeded. Officer Cooper testified that he had been dispatched to Thrash's ex-girlfriend's building to investigate a disturbance call. Officer Cooper then stated what Thrash's ex-girlfriend had reported to him, but Thrash's counsel interjected. During a side bar, Thrash's counsel renewed his objection regarding what Thrash's ex-girlfriend reported as hearsay. Upon the conclusion of the side bar, the trial court overruled Thrash's objection and it admonished the jury as follows:

> Ladies and Gentleman (sic), the officer is about to talk about a witness who is not here and is not subject to cross examination. You're only to consider what the witness says to show why the officer did what he did. You are not to consider whether what she said is being offered by the State to prove the truthfulness of

what she said. You're only to consider it to show why the officers did what they did. With that admonishment[,] I will allow the State to ask the question over Defense objection.

(Tr. p. 40). Officer Cooper subsequently testified that after he encountered Thrash's ex-girlfriend, she stated that Thrash "was inside the apartment building and she thinks he has a warrant." (Tr. p. 40). Officer Cooper described how Thrash resisted arrest, and that he was injured as result of Thrash's conduct of resisting arrest. Similarly, Officer Jackson testified that when he met Thrash's ex-girlfriend outside the apartment building, "she said that her ex-boyfriend [,Thrash,] was in the building. He wasn't supposed to be there and she thinks he may have had a warrant." (Tr. p. 75). Officer Jackson correspondingly testified about Thrash's acts of resistance, and he stated that Thrash "expressed that he was sorry that he resisted" and "was sorry that Officer Cooper had gotten hurt." (Tr. p. 82). At the close of the evidence, the jury returned a guilty verdict on both Counts of resisting law enforcement. On February 17, 2016, the trial court conducted a sentencing hearing. At the close of the hearing, the trial court sentenced Thrash to executed concurrent sentences of 730 days with 670 days suspended for the Level 6 felony conviction, and 365 days, with 305 days suspended for the Class A misdemeanor conviction.

[7] Thrash now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Admission of the Evidence*

Thrash argues that the trial court abused its discretion by admitting the officers' testimonies regarding his ex-girlfriend's statement that he possibly had a pending warrant of arrest. Thrash argues that the statements were inadmissible hearsay.

A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of abuse of discretion. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision. *Id*. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether an error in the introduction of evidence affected a defendant's substantial rights, we assess the probable impact of the evidence on the jury. *Sparkman*, 722 N.E.2d at 1262.

Hearsay is an out-of-court statement offered for "the truth of the matter asserted," and it is generally not admissible as evidence. Ind. Evidence Rule 801(c)(2), 802. "Whether a statement is hearsay will most often hinge on the purpose for which it is offered." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014) (quoting *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998)). The State contends that the officers' hearsay testimony was offered for the purpose of

describing the police investigation. We have held that out-of-court statements made to law enforcement are non-hearsay if introduced primarily to explain why the investigation proceeded as it did. *See Patton v. State*, 725 N.E.2d 462, 464 (Ind. Ct. App. 2000) (finding children's out-of-court statements that a man was inside a convenience store admissible to show why the police officer entered the building).

[11] Our supreme court explained the purpose and dangers of course-of-investigation testimony in *Blount*:

> Although course-of-investigation testimony may help prosecutors give the jury some context, it is often of little consequence to the ultimate determination of guilt or innocence. The core issue at trial is, of course, what the defendant did (or did not do), not why the investigator did (or did not do) something. Thus, course-of-investigation testimony is excluded from hearsay only for a limited purpose: to bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury. . . Indeed, such testimony is of little value absent a direct challenge to the legitimacy of the investigation. . . There is a risk the jury will rely upon the out-of-court assertion as substantive evidence of guilt— rather than for the limited purpose of explaining [the] police investigation—and the defendant will have no chance to challenge that evidence through cross-examination. . .

*Blount,* 22 N.E.3d at 565-66 (internal citations omitted). The *Blount* court continued to state that for the above reasons, "we must pay careful attention to the purpose for which an out-of-court statement is offered. The ultimate inquiry is: Was the out-of-court statement used primarily to show the truth of its content, constituting inadmissible hearsay, or merely to explain subsequent

police action, excluded from hearsay?" *Id.* To answer this question, the *Blount* court relied on the three-part test expressed in *Craig v. State,* 630 N.E.2d 207, 211 (Ind.1994): First, the court is to consider whether the challenged hearsay statement asserts a fact susceptible of being true or false. *Craig,* 630 N.E.2d at 211. Next, the court considers the evidentiary purpose for the proffered statement. *Id.* If the evidentiary purpose is to prove the fact asserted, and the statement is neither from a witness nor from a party as described in Indiana Evidence Rule 801(d) and none of the hearsay exceptions apply, the statement is hearsay and a timely objection should be sustained. *Id.* Finally, if the proponent of the statement urges admission for a purpose other than to prove the truth, the court should consider whether the fact to be proved is relevant to some issue in the case, and whether the danger of unfair prejudice that may result from its admission outweighs its probative value. *Id.*

[12] Thrash argues that his ex-girlfriend's out-of-court statement to the officers that she believed Thrash had a warrant is an assertion susceptible of being true or false. Turning to the first question articulated in *Craig*, we answer it in the affirmative. As in *Craig*, the State contends that the statement's purpose was to document the course of police investigation, that is a "purpose other than to prove a fact which is asserted." *Id.* Thus, we consider the last criteria in *Craig*: "Is the fact to be proved under the suggested purpose for the statement relevant to some issue in the case, and does any danger of prejudice outweigh its probative value?" *Id.*

[13]     In *Hernandez v. State,* 785 N.E.2d 294, 298 (Ind. Ct. App. 2003), *trans. denied*, we determined the relevance of evidence of "course of police work" testimony was slight when the genesis of the investigation was not relevant to any contested issue in the case. We held, however, that the prejudicial impact was great where the defendant was charged with promoting prostitution and the challenged testimony indicated the police began their investigation because they had received complaints about prostitution connected with the business. *Id.* Similarly, we conclude that in the case before us, Thrash's ex-girlfriend out-of-court statement that Thrash had a warrant had prejudicial impact. Here, both officers would have accomplished their goal of testifying why they pursued Thrash by only reiterating Thrash's ex-girlfriend's statement that Thrash was not meant to be inside her apartment building. As correctly noted by Thrash, the out-of-court statement by his ex-girlfriend did not provide evidence of Thrash's guilt to any of the resistance charges against him, and the reason the police pursued Thrash was not a contested issue at trial.

[14]     Although Thrash's claim satisfies the *Craig* test, it fails on harmless error. In the instant case, during the State's examination-in-chief, following Officer Cooper's hearsay testimony as to why he pursued Thrash on the scene, the trial court issued a limiting instruction to the jury to consider the officers' hearsay statement regarding Thrash having a pending warrant of arrest, *for their urged non-hearsay purpose rather than for their truth*. Our court presumes that a jury follows the instructions that it is given. *See R.T. v. State*, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006), *trans. denied*. Thrash makes no claim that the jury did not

follow the trial court's instructions. Further, there was ample evidence to support Thrash's two convictions of resisting law enforcement, such as refusing to remove his hands from his coat pockets, putting his hand underneath his body, and injuring an officer during the struggle. Thus, the erroneous admission of the statement regarding Thrash having a possible warrant was harmless.

## II. *Sufficiency of the Evidence*

[15] Thrash claims that the State presented insufficient evidence to support his conviction for his Level 6 felony resisting law enforcement. When reviewing a claim of insufficient evidence, it is well established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[16] Subsection (a) of section 35-44.1-3-1 sets out the acts that constitute the crime of resisting law enforcement:

A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

(2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

(3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

I.C. § 35-44.1-3-1(a). The last sentence of subsection (a) states that resisting law enforcement is a Class A misdemeanor "except as provided in subsection (b)." Subsection (b) then identifies a variety of circumstances that enhance the seriousness of the crime, and therefore the sentencing range:

The offense under subsection (a) is a:

(1) Level 6 felony if:

> (A) the offense is described in subsection (a)(3) and the person uses a vehicle to commit the offense; or

> (B) while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on or otherwise causes bodily injury to another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person;

**\*\*\*\***

I.C. § 35-44.1-3-1.  Thrash argues that evidence of Officer Cooper's injury was not sufficient to support his Level 6 felony because there was no evidence that he inflicted the alleged injury.  Thrash and the State direct us to three cases regarding causation of bodily injury while resisting arrest: *Whaley v. State*, 843 N.E.2d 1 (Ind. Ct. App. 2006), *trans. denied*; *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014); and *Moore v. State*, 49 N.E.3d, 1095, 1108 (Ind. Ct. App. 2016).

[17]   In *Whaley*, Whaley, attempted to prevent police officers from handcuffing him when he was lying on the ground by placing his arms underneath his body.  *Whaley*, 843 N.E.2d at 5.  Two officers had to hit his forearms in order to bring his arms behind his back to handcuff him, and both officers injured their wrists and hands in the process.  *Id*.  Because Whaley had caused these injuries, his conviction for resisting law enforcement was elevated to a Class D felony.  *Id*. at 10.  At trial and on appeal, Whaley argued that his conviction should not have been elevated to a Class D felony because the officers themselves caused their injuries when they hit him.  *Id*.  We upheld Whaley's conviction, concluding that the officers' injuries "were directly related to and caused by Whaley's resisting arrest."  *Id*. at 11.

[18]   In *Smith*, Smith, also resisted being handcuffed.  *Smith*, 21 N.E.3d at 123.  As a result, an officer "forcefully put all [his] body weight onto [Smith's] body[.]" *Id*.  The officer told Smith to put her hands behind her back or he would "take [her] to the ground," but she still did not comply.  *Id*.  The officer then tried to

give Smith a "knee strike" by "apply[ing] some pain to . . . a nerve that [ran] to the muscle of [her] leg," but that did not have the desired effect, so the officer "pulled her arm . . . possibly as hard as [he] could [and] [they] ended up on the ground." *Id*. In this process, the officer received lacerations to his knuckles and fingertips. *Id*. As a result, Smith was charged with, and convicted of, resisting arrest as an elevated Class D felony based on the officer's injuries. *Id*. at 124. On appeal, Smith argued that she did not cause the officer's injuries and that her conviction should not have been enhanced to a felony. We agreed with Smith that she was a "passive part of the encounter" and "took no actions toward" the officer. *Id*. at 125. We also stated that we did not "believe a person who is thrown to the ground necessarily 'inflicts' or 'causes' an injury suffered by the person who throws her to the ground." *Id*. As a result, we concluded that Smith did not cause the officer's injuries and that her conviction should not have been elevated to a felony. *Id*. at 126. We distinguished this conclusion from our decision in *Whaley* by noting that "unlike *Whaley*, Smith did not create a scenario in which [the officer's] only option in handcuffing her was to remove her hands from a location in which he could not reach." *Id*.

[19] Finally, in *Moore v. State*, 49 N.E.3d 1095, 1108 (Ind. Ct. App. 2016), a police officer fell down while engaged in a foot pursuit and was injured. *Id*. at 1099. The *Moore* court noted that, in *Whaley*, Whaley was the direct cause of the officers' injuries because he left the officers no other choice but to hit his arms and that "this meant that the officers' injuries were a highly foreseeable result of Whaley's actions" and that, "[i]n contrast, in *Smith*, the officer had other

options, and his decision to take Smith 'to the ground' and injure himself was not as foreseeable." *Id*. at 1108. In light of the *Whaley* and *Smith* cases, we held that a defendant's acts of resistance must be a proximate cause of the injury, and not merely a contributing cause. *Id*. at 1107-08. We noted, a contributing cause is "a factor that—though not the primary cause—plays a part in producing a result." *Id*. at 1107 (quoting *Abney v. State*, 766 N.E.2d 1175, 1178 (Ind. 2002)). We described that

> [a] finding of proximate cause embodies a value judgment as to the extent of the physical consequences of an action for which the actor should be held responsible. Accordingly, "proximate cause questions are often couched in terms of 'foreseeability;' an actor is not held responsible for consequences which are unforeseeable." It follows that, where an intervening cause is claimed as superseding the defendant's actions, the intervening cause must be unforeseeable to relieve the defendant of criminal liability.

*Id*. at 1107–08 (quoting *Gibbs v. State*, 677 N.E.2d 1106, 1109 (Ind. Ct. App. 1997)). Applying the proximate cause standard, the majority in *Moore* found the evidence was insufficient to prove that the defendant's actions caused the arresting officer's injuries. *Id*. at 1108. The court noted that the officer would not have been injured if he had not pursued the defendant, but reasoned "that fact is only sufficient to prove that Moore was a contributing cause of the injury" and that "[t]he actual cause of [the officer's] fall [was] not clear from the record." *Id*. at 1108.

[20] Thrash claims the facts of his case are akin to the *Smith* case, and he suggests he played a minimal role leading to Officer Cooper's back injury, thus, we should reverse his Level 6 felony resisting law enforcement conviction. Thrash additionally makes a similar argument to that in *Moore.* Specifically, Thrash argues that the

> exact cause of Officer Cooper's injuries are unclear from the record, but one thing is clear–Officer Cooper caused them himself. And Officer Cooper had other options besides throwing Thrash to the ground. A taser would likely have been even more effective than a strength contest, and would have required little to no physical effort from Officer Cooper."

(Appellant's Br. p. 22). We disagree with Thrash. Under the circumstances of the case, we find that Thrash's case is more akin to the *Whaley* case and is distinguishable from *Smith* and *Moore.* In terms of proximate cause as enunciated in the *Whaley* case, Thrash created a scenario which directedly produced Officer Cooper's injuries. After Officer Cooper effected a leg sweep which made Thrash fall, he and Officer Jackson followed Thrash to the ground. Like the defendant in *Whaley*, Thrash continued to resist arrest from both officers by refusing to remove his hands/arms from underneath his body. When the struggle was over, Officer Cooper was unable to stand and he experienced back pain. By his own admission, Thrash stated that he "was sorry that Officer Cooper had gotten hurt." (Tr. p. 82). At Thrash's jury trial, Officer Cooper testified that prior to his encounter with Thrash, he had not experienced any lower back pain. Officer Cooper further testified that he later visited a

clinic and was diagnosed with a "sprain" and was off work for about a week. (Tr. p. 69). Based on the *Whaley* holding, and upon our review of the testimony most favorable to the Level 6 felony conviction, we conclude that the State presented sufficient evidence to prove that Thrash was the proximate cause of Officer Cooper's back injury which was inflicted or otherwise caused while Thrash resisted arrest.

### III. *Double Jeopardy*

Lastly, Thrash claims that his two convictions for resisting law enforcement violate the Double Jeopardy Clause under the Indiana Constitution. Specifically, he argues that the convictions violate the actual-evidence test. Whether convictions violate double jeopardy is a question of law which we review *de novo*." *Id*. *Vermillion v. State*, 978 N.E.2d 459, 464 (Ind. Ct. App. 2012).

Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The Indiana Supreme Court has determined that two or more offenses constitute the same offense for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Frazier v. State*, 988 N.E.2d 1257, 1262 (Ind. Ct. App. 2013) (citing *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)).

[23] In order to find a double jeopardy violation under the actual evidence test, a reviewing court must conclude there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense. *Garrett v. State*, 992 N.E.2d 710, 722–23 (Ind.2013). "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. . .'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)). In determining the facts used by the fact-finder, "it is appropriate to consider the charging information, jury instructions, . . . arguments of counsel" and other factors that may have guided the jury's determination. *Lee*, 892 N.E.2d at 1234 (citing *Spivey*, 761 N.E.2d at 832, and *Richardson*, 717 N.E.2d at 54 n.48).

[24] Thus, under the actual evidence test, "it is not sufficient merely to show that the same evidence may have been used to prove a single element of two criminal offenses." *Henderson v. State*, 769 N.E.2d 172, 177 (Ind. 2002). Rather, "in order for there to be a double jeopardy violation under the actual-evidence test the evidentiary footprint for all the elements required to prove one offense must be the same evidentiary footprint as that required to prove all the elements of another offense." *Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015).

[25] First, we note that there is no requirement that police officers inform a person that he is under arrest before that person can legally resist. Only when a person

"flees" law enforcement is there a requirement that law enforcement make some form of outward communication with a person before that person can resist. *See* I.C. § 35-44.1-3-1(a)(3). For the Class A misdemeanor, the State did not advance a theory that Thrash's resistance was by fleeing, but rather alleged and presented evidence that Thrash forcibly resisted, obstructed, or interfered with law enforcement officers while the officers were lawfully engaged in the execution of their duties pursuant to Indiana Code Section 35-44.1-3-1(a)(1). For the Level 6 felony as charged, the State alleged that while Thrash was resisting arrest, he inflicted bodily injury or otherwise caused injury to Officer Cooper. *See* I.C. § 35-44.1-3-1(b)(1)(B).

[26] Our review of the preliminary instructions shows that the trial court instructed the jury to find Thrash guilty of the Class A misdemeanor if the State established beyond a reasonable doubt that Thrash forcibly resisted arrest from Officers Cooper and Jackson. For the felony charge, the trial court required an additional showing by the State that Thrash had inflicted bodily injury to Officer Cooper while resisting arrest. During trial, the State panned out details of Thrash's act of resistance where he ran from the officers, hid in a dark basement, refused to remove his hands from his pockets after several commands, and broke free from the officers by jerking his arms away. In addition, the State presented evidence that Officer Cooper was injured while trying to subdue Thrash, who was resisting arrest, thereby supporting the Level 6 felony charge.

[27] Within the context of multiple resisting law enforcement convictions, we have held that "[a] defendant may be convicted of multiple counts of resisting law enforcement when he has committed more than one of the acts enumerated under [Indiana Code Section 35-44.1-3-1]." *Williams v. State*, 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001). Thus, we have upheld two convictions for resisting law enforcement when one involved the defendant's act of fleeing from officers under Indiana Code Section 35-44.1-3-1(a)(3), and the other involved the defendant's infliction of bodily injury upon an officer while resisting under Indiana Code Section 35-44.1-3-1(b)(1)(B). *Id*.

[28] Although Thrash may have acted with a common purpose, the two Counts for resisting arrest involved discrete elements and were proved by discrete evidence. Specifically, the misdemeanor conviction was based on Thrash's actions of resisting arrest from Officers Cooper and Jackson, and the felony conviction was based on Officer Cooper's back injury which was inflicted by Thrash's conduct of resisting arrest. Accordingly, we conclude that Thrash's multiple convictions for resisting arrest are not barred by the prohibition against double jeopardy. *See Williams*, 755 N.E.2d at 1186.

## CONCLUSION

[29] Based on the above, we conclude that the trial court did not abuse its discretion by admitting hearsay testimony by the officers regarding Thrash having a possible warrant of arrest; there was sufficient evidence to support Thrash's Level 6 felony resisting law enforcement; and there is no double jeopardy violation in Thrash's convictions for two Counts of resisting law enforcement.

Affirmed.

Robb, J. and Pyle, J. concur